# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ALVARO GIRON ARRIOLA,

Petitioner,

v.

TODD BLANCHE et al.,

Respondents.

Case No. 5:26-cv-02957-MAR

**ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**
[Dkt 1, 7]

## I.

## INTRODUCTION & PROCEDURAL HISTORY[1]

On May 29, 2026, Petitioner Alvaro Giron Arriola ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition") challenging his detention at the Adelanto Detention Center in Adelanto, California. Dkt. 1 ("Pet."). Petitioner is a Guatemalan national in the custody of U.S. Immigration and Customs Enforcement ("ICE"), a component of the Department of Homeland Security ("DHS"). Id. ¶ 47.

Petitioner entered the United States on a tourist visa on May 30, 1997, and has resided in the United States ever since. Id. Over nearly three decades, "Petitioner raised his four daughters, worked for almost the entirety of his time in the U.S., and has filed taxes for every year in which he was required to." Id. ¶ 48. Petitioner is also the

---

[1] The background provided herein arises from the allegations in the Petition, Petitioner's Application for Temporary Restraining Order, and attached exhibits. Respondents' Answer does not contest any of these facts, nor do the exhibits Respondents have submitted in support of their Answer conflict with the facts presented by Petitioner. The Court considers the facts alleged by Petitioner to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

beneficiary of a Petition for Non-Citizen Relative, Form I-130, which has been granted. Id. ¶ 14.  Petitioner is therefore eligible to immediately adjust status and become a Legal Permanent Resident ("LPR") of the United States.  Id.

Petitioner became unhoused approximately six years ago, and often slept and spent time in public spaces, such as parks.  Id. ¶ 49.   Petitioner has a criminal history of "almost exclusively municipal code violations having to due with his unhoused status," as well as one conviction for non-violent obstruction of justice, which Petitioner asserts arose from a misunderstanding with law enforcement officers, and a 2011 conviction on a vandalism charge.  Id.

Petitioner was detained by ICE on August 31, 2025.  Id. at 10.  On March 9, 2026, Immigration Judge Ravit Halperin ("the IJ") held a Rodriguez bond hearing for Petitioner.[2]  Id.  That same day, the IJ denied bond in a one-page written order ("the Detention Order"), consisting of a checked box next to the words, "Denied, because Danger/Flight."[3]  Application for Temporary Restraining Order ("TRO Application" or "TRO App."), Dkt. 7, Ex. G.  Petitioner has appealed that order to the Board of Immigration Appeals ("BIA"), but a briefing schedule for the appeal has not yet been set.[4]  Pet. ¶ 57.

---

[2]  "Named after the Ninth Circuit's decision in Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), which has an extensive history that need not be recounted here, a Rodriguez bond hearing is a periodic custody redetermination proceeding—required in the Central District of California (for reasons not pertinent here)—where the government must show at six-month intervals that a detainee's continued detention pending removal proceedings is justified by clear and convincing evidence of flight risk or danger to the community."  Penaloza Monsalve v. Semaia, No. 5:26-CV-00463-SVW-ACCV, 2026 WL 1625352, at *1 (C.D. Cal. June 1, 2026); see also Espada Hernandez v. Warden, , No. 5:26-CV-02231-AJR, 2026 WL 1362396, at *3 (C.D. Cal. May 11, 2026).

[3]  Although the IJ's order refers to the hearing as a "custody redetermination," neither Petitioner nor Respondents describe any prior custody hearing or determination.

[4] On April 9, 2026, after Petitioner appealed to the BIA and after the filing of the Instant Petition, the IJ authored a more substantive "Bond Memorandum and Order of the Immigration Judge."  TRO App., Ex. H.  The IJ, in her own words, "provides this Memorandum to facilitate review of Respondent's appeal."  Id.  Although Respondents assert that this "Memorandum" was issued "[d]uring a redetermination hearing, on April 9, 2026" (Answer at 1:11), that does not appear to be the case.  There is no suggestion in the IJ's Memorandum or elsewhere in the record that a second hearing was held on April 9.

2

On May 29, 2026, Petitioner filed the instant Petition.  Petitioner argues that his detention violates his Fifth Amendment rights and the Administrative Procedure Act ("APA").  On June 1, 2026, Petitioner also filed an Emergency Application for a Temporary Restraining Order ("TRO") arguing he faces irreparable harm resulting from worsening, inadequately treated health conditions.[5]  Dkt. 7.  Respondents filed an Answer to the Petition, in which they also respond to Petitioner's Application for a TRO.  Dkt. 9 ("Answer").  Petitioner then filed a Response in Support of the Application for a TRO, addressing Respondents' arguments with respect to both the TRO and the Petition.  Dkt. 10 ("Reply").  The Court therefore considers the Petition, the TRO Application, Respondents' Answer, and Petitioner's Reply.

For the reasons set forth the below, the Court **GRANTS** the Petition and orders Respondents to immediately release Petitioner from custody.[6]

## II.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth

---

[5] The TRO Application states that Petitioner was moved to an off-site medical facility due to chest pains, but includes only limited information about Petitioner's current condition, as neither his family nor his attorney were informed where Petitioner was located or were permitted to speak with him.  TRO App.  at 13–14.

[6] Having determined that the Petition should be granted, and that Petitioner is entitled to immediate release from detention, the Court need not and does not address the TRO Application's contention that temporary, preliminary injunctive relief should also be granted.

Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and alterations omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  The Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").  Mathews v. Eldridge, 424 U.S. 332 (1976).

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes upon a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe on a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests."  Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).

### III.

### ANALYSIS

**A.     The Court has jurisdiction to review the immigration judge's detention determination**

Respondents contend that under 8 U.S.C. § 1252(g), this Court lacks jurisdiction to review the Immigration Judge's April 9, 2026 denial of bond because bond

4

determinations are committed to the discretion of the Attorney General.  Answer at 4; 8 U.S.C. § 1252(g) ("[N]o court shall have jurisdiction to hear any case . . . arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien.").  Respondents suggest that Petitioner's claims fall under Section 1252(g) because they "stem from his detention during removal proceedings, [and t]hat detention arises from the decision to commence such proceedings against her [sic]."  Answer at 4:17–18.  The Supreme Court has made clear, however, that the language of Section 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." Jennings v. Rodriguez, 583 U.S. 281, 294 (2018).  Where, as here, a petitioner seeks to "enforce[e] his constitutional rights to due process in the context of . . . removal proceedings—*not* the legitimacy of the removal proceedings or any removal order[—] § 1252(g) does not strip the Court of jurisdciction."  Becerra-Gonzalez v. Divver, No. 26-CV-1997 JLS (DEB), 2026 WL 1021377, at *2 (S.D. Cal. Apr. 15, 2026); see also Huynh v. Marin; No. 5:26-CV-02405-SP, 2026 WL 1772734, at *2 (C.D. Cal. June 16, 2026) ("Because petitioner is challenging his detention rather than any of the three actions listed[,] . . . § 1252(g) do[es] not strip this court of jurisdiction.").

Respondents also argue that this Court lacks jurisdiction pursuant to 8 U.S.C. § 1226(e) and 8 U.S.C. § 1252(a)(2)(B)(ii).  Answer at 3.  Under Section 1226(e), "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."  8 U.S.C. § 1226(e).  "That provision does not, however, preclude habeas jurisdiction over constitutional claims or questions of law."  Hernandez v. Sessions, 872 F.3d 976, 987 (9th Cir. 2017) (quotation marks and citations omitted). "Claims that the discretionary bond process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of [28 U.S.C.] § 2241."  Id. (cleaned up).  Section 1252(a)(2)(B)(ii) does not bar this Court's review for similar reasons.  That section precludes judicial review of any decision that is "specified . . . to

be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). Such specified decision-making power must be "entirely within [the Attorney General's] judgment or conscience," not "guided by legal standards." Spencer Enters., Inc. v. United States, 345 F.3d 683, 690 (9th Cir. 2003). Respondents, of course, "do not have discretion to violate the Constitution, notwithstanding their discretion over bond determinations in general." Hernandez v. Mullin, No. 5:26-CV-00585-JAK (ADSX), 2026 WL 846037, at *4 (C.D. Cal. Mar. 24, 2026); see also Ghamoushi-Ramandi v. Janecka, No. 5:26-CV-00885-SRM-JDE, 2026 WL 1107385, at *3 (C.D. Cal. Apr. 20, 2026). Section U.S.C. § 1252(a)(2)(B)(ii) does not, therefore, deprive this Court of jurisdiction over the constitutional claims Petitioner brings here.

**B.     Exhaustion is not required**

Respondents also argue that this Court should decline to review the Immigration Judge's detention determination because Petitioner has not yet exhausted his administrative remedies, as his appeal to the BIA remains pending. Answer at 6–8. "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011). In the context of a habeas petition, however, the administrative exhaustion requirement is prudential, not mandatory or jurisdictional. See Y.S.G. v. Andrews, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025) ("The federal habeas statute under which this case was filed does not require exhaustion of administrative remedies.") (emphasis added). A petitioner is not, therefore, required to exhaust administrative remedies where exhaustion would be futile or irreparable harm would result. Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004); Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 961–962 (N.D. Cal. 2019) (waiving exhaustion requirements and noting the BIA lacks jurisdiction to decide questions of constitutionality of immigration laws); see also Wang v. Reno, 81 F.3d

808, 814 n.8 (9th Cir. 1996) (per curiam).

The Petition itself alleges that exhaustion would be futile and cause irreparable harm.  Pet. at 14–16.  Respondents, in arguing that exhaustion should be required, recite the factors relevant to a threshold exhaustion analysis.  Answer at 7–8 (citing Puga v. Cherthoff, 488 F.3d 812 (9th Cir. 2007).  Respondents do not, however, address Petitioner's contention that, notwithstanding the traditional exhaustion analysis, exhaustion should not be required here because it would be futile, inadequate, and would result in irreparable harm to Petitioner.  The alleged "violation of Petitioner's due process rights is sufficient to satisfy the irreparable harm requirement."  Doe v. Becerra, 787 F. Supp. 3d 1083, 1095 (E.D. Cal. 2025).  Even where, as here, a petitioner has appealed a bond determination to the BIA, "requiring Petitioner to be subjected to unlawful detention pending the BIA's decision would cause irreparable harm."  Rodriguez Cabrera v. Mattos, 808 F. Supp. 3d 1159, 1176 (D. Nev. 2025); Y.S.G., 2025 WL 2979309, at *7 ("[P]etitioner has adequately demonstrated that irreparable injury will result if he has to await the outcome of his BIA appeal.").  Further, even if the BIA were to ultimately reverse the IJ's decision denying bond, that would not afford Petitioner an adequate administrative remedy for his prolonged detention in the interim.  "[B]ecause of delays inherent in the administrative process, BIA review would result in the very harm that the bond hearing was designed to prevent: prolonged detention without due process during lengthy and backlogged removal proceedings."  Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) (citation modified); see also Ligario Hernandez v. Mullin, 2026 WL 846037, at *8 (C.D. Cal. Mar. 24, 2026).  Petitioner has satisfied his burden to show that he will suffer irreparable harm while he waits for the Board of Immigration Appeals to rule on his appeal.  Accordingly, and absent any argument to the contrary from Respondents, the Court concludes that it is appropriate to waive the prudential administrative exhaustion requirement.

///

7

**C.      Petitioner's bond hearing violated due process**

It has long been recognized in this circuit that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011). As the court explained, "[b]ecause it is improper to ask the individual to "share equally with society the risk of error when the possible injury to the individual"—deprivation of liberty—is so significant, a clear and convincing evidence standard of proof provides the appropriate level of procedural protection." Id., 638 F.3d at 1203-4 (citing Addington v. Texas, 441 U.S. 418, 427 (1979); Martinez v. Clark, 124 F.4th 775, 784-86 (9th Cir. 2024); De La Garza v. Albarran, No. 25-CV-10305-HSG, 2025 WL 3707049, at *2 (N.D. Cal. Dec. 22, 2025).

The clear and convincing evidence standard requires "an abiding conviction that the truth of [the] factual contentions at issue is highly probable." Mondaca-Vega v. Lynch, 808 F.3d 413, 422 (9th Cir. 2015) (en banc) (citation modified). There are at least two ways to challenge whether the IJ applied the correct standard of proof in determining whether to grant release on bond. "First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion. Second, it may be clear from the adjudicator's opinion itself that he simply did not apply the correct standard to the facts." Hechavarria, 358 F. Supp. 3d at 240 (citations omitted); see also Kharis v. Sessions, No. 18-CV-04800-JST, 2018 WL 5809432, *5 (N.D. Cal. 2018) (District court must evaluate whether the IJ relied upon proof that "as a matter of law—could not establish that conclusion [of danger or flight risk].").

The question whether an IJ properly determined that an alien presents a flight risk or a danger to the community is reviewable as a mixed question of law and fact. Martinez, 124 F.4th at 783–84. Because, however, such examinations "require a close review of agency-found facts," courts review the IJ's determination under a deferential "abuse of discretion" standard. Id. at 784. When the decision of an IJ is "arbitrary,

8

irrational, or contrary to law," it is an abuse of discretion. Bonilla v. Lynch, 840 F.3d 575, 581 (9th Cir. 2016) (quoting Avagyan v. Holder, 646 F.3d 672, 678 (9th Cir. 2011)). Abuse of discretion review does not, however, permit "reweigh[ing] evidence." Martinez, 124 F.4th at 784 (citation omitted). Thus, although district courts have jurisdiction to determine whether "an IJ correctly applied the statutory standard to a given set of facts," they may not second-guess an IJ's underlying factual determinations, including issues such as 'credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides.'" Id. at 782–83 (quoting Wilkinson v. Garland, 601 U.S. 209, 221, 225 (2024)); see also Quan v. Barr, No. 20-CV-8118, 2021 WL 308610, at *4 (N.D. Cal. 2021).

Here, as an initial matter, Respondents provide no substantive defense of the IJ's order. That is, notwithstanding the jurisdictional and exhaustion arguments discussed above, Respondents make no argument that the IJ properly allocated the evidentiary burden or applied the proper standard.

The Ninth Circuit has explained that when assessing whether an alien "is a danger to the community or a risk of flight," an immigration judge may consider the following factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

Martinez, 124 F.4th at 783 (internal quotation marks omitted). An immigration judge has "broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative." Id. at 784.

///

The Ninth Circuit has also explained, however, that an immigration judge "abuses [her] discretion when [she] fails to consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for [the decision]." Franco-Rosendo v. Gonzales, 454 F.3d 965, 966 (9th Cir. 2006) (internal quotation marks omitted); see also Barrera-Leyva v. Immigration and Naturalization Serv., 653 F.2d 379, 380 (9th Cir. 1981) (immigration judge abused discretion by "fail[ing] to consider all of the relevant factors"); Sales v. Johnson, 323 F. Supp. 3d 1131, 1141 (N.D. Cal. 2017) (ordering release of immigration detainee after bond hearing where government did not present sufficient evidence to show flight risk, especially in light of evidence favorable to the petitioner).  In the context of a flight-risk determination, factors unique to the detainee must be evaluated in determining whether the noncitizen is unlikely to appear for future immigration proceedings.  See In re Patel, 15 I. & N. Dec. 666, 666–67 (BIA 1976) (ordering release where IJ erroneously set a bond based on factors that "bear little if any relevance to the issue of whether or not the respondent is likely to appear for his deportation proceeding"); cf. Martinez, 124 F.4th at 780 (no abuse of discretion where IJ "evaluated [petitioner's] mitigating evidence, such as his successful pre-incarceration release on bond, the district court's statements during sentencing, his efforts at rehabilitation, his family ties, and his strong community support.").

Here, there is little doubt that Petitioner's March 9, 2026 bond hearing and the IJ's resulting, "check-the-box" Detention Order, which stated only, "Denied, because Danger/Flight," did not comport with due process.  The Detention Order provides no reasoning whatsoever, nor any indication whether the IJ considered any of the evidence submitted.  See Franco-Rosendo, 454 F.3d at 966; Miri v. Bondi, No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302, at *7-9 (C.D. Cal. Mar. 5, 2026).  Nor does the Detention Order even purport to have placed the burden of proof on Respondents, let alone to have required Respondents to demonstrate danger or flight risk by clear and convincing evidence.  See Mendoza v. Noem, No. 25-CV-3227, 2026 WL 923311, at *4

(C.D. Cal. Apr. 1, 2026) ("The bond hearing Petitioner received . . . failed to comport with due process because 'the IJ did not hold Respondents to a clear and convincing burden of showing that Petitioner was a flight risk.' . . . Such a failure to apply the correct legal standard constitutes an abuse of discretion by the IJ.") (quoting Melchor-Melchor v. Noem, No. 26-CV-766, 2026 WL 760058, at *1 (C.D. Cal. Mar. 16, 2026)); Martinez, 124 F.4th at 785 (failure to apply the correct legal standard is an abuse of discretion).

The only evidence in the record regarding the detention hearing itself confirms that the IJ abused her discretion. Respondents did not file any evidence apart from Petitioner's Notice to Appear and FBI rap sheet, and made no argument in support of detention prior to the IJ's ruling. Dkt 7-1 ¶¶ 6, 23.[7] See Singh, 638 F.3d at 1205 (finding failure of proof by clear and convincing standard where "the government never argued that [the petitioner] was a flight risk or presented any evidence to that effect."); N.A. v. Warden, Adelanto Det. Facility, No. 5:25-CV-03007-MBK, 2026 WL 1045196, at *8 (C.D. Cal. Apr. 15, 2026) ("[I] is . . . unclear how the IJ could find that [the government] met its burden when it presented no evidence and no argument."). The record indicates, furthermore, that the IJ did not require Respondents to provide evidence that Petitioner is deportable, did not permit Petitioner's counsel to discuss the circumstances of his lawful entry into the United States or make other arguments, and asked Petitioner questions that appeared to conflict with favorable documentary evidence in the record, with no acknowledgement of or reference to that evidence.[8] Id. ¶¶ 7–11, 16, 18, 22.

///

---

[7] The record before the Court indicates that Respondents spoke for approximately one minute arguing against bond at the end of the hearing, repeating the arguments against bond that the IJ had already articulated. Dkt. 7-1 ¶ 23.

[8] The also Court notes that due process requires an IJ to affirmatively inquire into an individual's financial ability to post bond and suitability for release on alternative conditions. Hernandez v. Sessions, 872 F.3d at 991–994. Here, there is no evidence that the IJ so inquired.

These facts permit only one conclusion: the IJ abused her discretion in denying Petitioner bond.[9]

**D.      The appropriate remedy is release**

The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243); see also Brown v. Davenport, 596 U.S. 118, 127-28 (2022) (explaining that district courts have equitable discretion, "as law and justice require," for remedying unlawful detention in habeas proceedings).

Here, the deficient March 9, 2026 hearing was a Rodriguez bond hearing. The applicable language of the Rodriguez injunction requires release "unless the government shows by clear and convincing evidence that detention is justified based on his or her danger to the community of risk of flight." See Hernandez, 2026 WL 1362396 at *8 (quoting Rodriguez, 715 F.3d at 1131). As discussed above, the bond hearing Petitioner received fell short of that standard. Where a Rodriguez bond hearing violates due process and the terms of the injunction, release is the appropriate remedy. Id.

---

[9] Although Respondents do not raise it here, the Court notes further that examination of the Mathews factors leads to the same result. To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Respondents do not dispute that Petitioner has a substantial liberty interest in his freedom from custody, particularly in light of the extended length of his continuous residence in the United States since his legal entry in 1997. See, e.g., Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Chaudhry v. Bondi, No. 2:25-CV-02339-DGE, 2025 WL 3706534, *4 (W.D. Wash. 2025); Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); Diallo v. Joyce, No. 25-CV-9909, 2025 WL 3718477, *6 (S.D.N.Y. 2025). The risk of erroneous deprivation of this interest is unacceptably high where, as here, Petitioner's bond hearing did not comport with due process. "Finally, as other courts have done, this Court concludes that the government's interest in detaining Petitioner without proper process is slight." J.E.H.G., 2025 WL 3523108, at *12.

The Court also concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.  See Perez Bueno v. Janecka, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *4 (C.D. Cal. Feb. 5, 2026) (ordering that the petitioner be released from immigration detention and that he not be re-detained without a pre-deprivation hearing); Mourey v. Bowen, No. 5:25-CV-03262-WLH (DTB), 2026 WL 467567, at *6 (C.D. Cal. Jan. 31, 2026), report and recommendation adopted, No. 5:25-CV-03262-WLH (DTB), 2026 WL 464788 (C.D. Cal. Feb. 17, 2026) ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty.  Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community.") (cleaned up); Carafas, 391 U.S. at 239.  "A permanent injunction may be entered, at the discretion of the District Court, where a petitioner shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006).  The Court finds Petitioner has made such a showing here.  He has suffered an irreparable injury by being detained without due process of law, and would again if Respondents were to repeat their conduct.  Legal remedies such as damages would be inadequate to cure any further unconstitutional loss of liberty.  The balance of hardships and the public interest favor the imposition of an injunction against future re-detention without notice and a pre-deprivation hearing, such that and injunction would only require Respondents to provide basic due process in the event they seek to re-detain Petitioner, as weighed against forcing Petitioner again to suffer unlawful detention and bring suit to win his release.  Thus, the Court will enter a permanent injunction prohibiting Respondents from repeating the same unconstitutional detention of Petitioner that necessitated this

13

habeas case in the first instance.[10]  See, e.g., Esquivel Pacheco v. LaRose, 2026 WL 242300, at *7 (S.D. Cal. Jan. 29, 2026) ("Consistent with many other courts, the Court enjoins any further detention of Petitioner unless the government first—prior to any detention—justifies the deprivation of his liberty interest at a bond hearing."); see also Zinermon, 494 U.S. at 127 (although there may be "special case[s]" where a pre-deprivation hearing is impracticable, "absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process.")[11]; Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025).

## V.

## CONCLUSION AND ORDER

For the reasons stated above, the Petition for Writ of Habeas Corpus is **GRANTED**.[12]

Respondents shall immediately release Petitioner **Alvaro Giron Arriola** from custody under reasonable conditions of supervision.[13]  **Respondents shall file a**

---

10 Petitioner requested such relief in the Petition. Respondents did not address this request in their Answer.

[11] Accordingly, the IJ's post-hoc "Memorandum" does not change the result here.  The Memorandum, which spans approximately two pages, consists largely of a recitation of Petitioner's criminal history.  Dkt. 7-8 at 2.  The Memorandum also acknowledges a letter from Petitioner's daughters, while concluding "that the strength and closeness of [Petitioner's] relationship with his children was not clear," and "it remains to be seen whether he will agree to move in with them."  Id. The Memorandum concludes by opining that Respondents have therefore proved by clear and convincing evidence that Petitioner is a danger and a flight risk.  Id. at 2–3.  Respondents' Answer, as stated above, includes no substantive argument that the Memorandum, which appears to reflect continued legal errors, is constitutionally adequate in its own right.  See, e.g., Hernandez v. Sessions, 872 F.3d at 991–994; Singh, 638 F.3d at 1206 (discussing criminal history's bearing on dangerousness).  More fundamentally, however, and even assuming that the Memorandum had resulted from some second, constitutionally permissible hearing, as "an increasing wave of district courts have concluded, a post-hoc bond hearing is insufficient to remedy the denial of a petitioner's right to pre-deprivation process," and is no substitute for release.  Herman v. DHS, --- F.Supp.3d ---, 2026 WL 1723960, at *5 (C.D. Cal. June 12, 2026) (quoting Orellana-Rivera v. J. Johnson, 5:26-cv-2116-HDV-AJR, 2026 WL 1390433, at *1 (C.D. Cal. May 14, 2026)) (discussing noncitizen previously paroled pursuant to 8 U.S.C. § 1226(a)).

[12]  The TRO Application (Dkt. 7) is VACATED as moot.

[13]  Petitioner's A-number is not included in the Petition or Reply, and is redacted from all exhibits.

**notice of compliance within twenty-four hours of the date of this Order.** Provided that Petitioner is not subject to a Final Order of Removal, Respondents are enjoined from re-detaining Petitioner without first providing Petitioner with a pre-deprivation bond hearing before an immigration judge at which Respondents will bear the burden of proof.  Petitioner shall not be detained unless, at that hearing, Respondents demonstrate by clear and convincing evidence that Petitioner is a flight risk or a danger to the community, and that there are no conditions or combination of conditions that will reasonably assure Petitioner's appearance and/or the safety of any other person in the community.

IT IS SO ORDERED.


DATED:   June 22, 2026

_____

HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE

15